UNITED STATES of America, Appellee,

v.

Franklin ALMONTE, Defendant–Appellant.

No. 494, Docket 91–1441.

United States Court of Appeals, Second Circuit.

Argued Nov. 26, 1991.

Decided Feb. 4, 1992.

Before WINTER, PRATT and MAHONEY, Circuit Judges.

28

Darrell B. Fields, New York City (Henriette D. Hoffman, The Legal Aid Soc., Federal Defender Services Appeals Unit, of counsel), for defendant-appellant.

Denis J. McInerney, New York City (Otto G. Obermaier, U.S. Atty. for the Southern District of New York, Michael Sommer, Helen Gredd, of counsel), for appellee.

Before OAKES, Chief Judge, WALKER, Circuit Judge, and PARKER,* District Judge.

PER CURIAM:

Franklin Almonte appeals from a judgment of the United States District Court for the Southern District of New York, Charles S. Haight, *Judge,* convicting him of conspiring to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. § 846 (1988). For the reasons set forth below, we affirm.

### BACKGROUND

Almonte and co-defendant Jose Martin Bello were indicted on one count of conspiring to distribute heroin in violation of 21 U.S.C. § 846 (1988). At trial, the government presented the testimony of Drug Enforcement Agency ("DEA") agents Bruce Travers and Eric Stangeby. Travers stated that after their arrest, Almonte and Bello were questioned separately, and that each had given self-incriminating responses. Almonte, according to the agents' testimony, admitted at his post-arrest interview that he knew of the proposed heroin sale, that Bello was to pay him five hundred dollars for his participation in the transaction as a driver, and that he had previously worked with Bello on a heroin deal in Brooklyn.

Almonte sought to discredit the DEA agents' testimony about these admissions by introducing notes that Assistant United

---

* The Honorable Fred I. Parker, Chief Judge of the United States District Court for the District   of Vermont, sitting by designation.

States Attorney Robert Ray made during a debriefing of DEA agent Travers. In these notes, Ray recorded Travers's recollection of Almonte's admissions. Specifically, Ray wrote:

> BELLO—I organized it. I put money together. ½ unit for 50,000 grand. Almonte works for me. Back to Brooklyn to move it. Almonte would get $500 for this deal.
>
> ALMONTE—Yeah, that's right.

The defense argued that the notes—in particular, the notation "Yeah, that's right"—were a verbatim record of what Travers told Ray, and that they could therefore be used to impeach Travers's testimony at trial that Almonte was questioned separately from Bello and made extensive admissions.

The government opposed the introduction of Ray's notes. Outside the presence of the jury, Ray testified that the notes were not a verbatim transcript, but rather a shorthand summary of Travers's statement. Ray had explained at an earlier hearing that he wrote the words "Yeah, that's right" as "a shorthand way for myself to remember that the substance of Almonte's statement was the same as Mr. Bello's statement; that the two statements were consistent." Ray testified that, in the debriefing, Travers told him that Almonte had confessed to knowing about the arrangements for the heroin sale, working in Bello's organization and having a prior relationship with Bello with regard to heroin trafficking, and expecting to be paid five hundred dollars for his role in the transaction.

The district court concluded that there was no basis for attributing the words in Ray's notes to Travers, and therefore refused to permit the introduction of the notes as a prior inconsistent statement to impeach Travers's in-court testimony. The burden, Judge Haight explained, was on Almonte to make a threshold showing that the notes recorded verbatim Travers's statement to Ray, and Almonte had failed to meet that burden.

The jury convicted Almonte of conspiring to distribute heroin in violation of 21 U.S.C. § 846 (1988), and the court sentenced him to five years' imprisonment, four years' supervised release, and a fifty dollar special assessment.

## DISCUSSION

### I

The Federal Rules of Evidence allow the introduction of a prior inconsistent statement to impeach a witness's testimony. We have held, however, that a "third party's characterization" of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization. *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3027, 65 L.Ed.2d 1123 and 449 U.S. 884, 101 S.Ct. 236, 66 L.Ed.2d 109 (1980). Thus, in the absence of endorsement by the witness, a third party's notes of a witness's statement may not be admitted as a prior inconsistent statement unless they are a verbatim transcript of the witness's own words. The problem, in essence, is one of relevancy. If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible.

The burden of proving that notes reflect the witness's own words rather than the note-taker's characterization falls on the party seeking to introduce the notes. This conclusion follows from Federal Rules of Evidence 901(a) and 104(b). Rule 901(a) provides:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

The Advisory Committee Notes to Rule 901(a) explain that such authentication is to be treated as a type of conditional relevancy under Rule 104(b), which provides:

> When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

Thus, a judge may disallow the introduction of conditionally relevant evidence unless its proponent presents evidence sufficient to support a finding that the condition—for our purposes, the identification of a third party's notes as a verbatim transcript of a witness's prior statement—is fulfilled. The party proffering the evidence bears the burden of proving "a rational basis for concluding that an exhibit is what it is claimed to be." *United States v. Hon*, 904 F.2d 803, 809 (2d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 789, 112 L.Ed.2d 851 (1991).

We will overturn a determination of whether that burden has been met only if the district court has abused its discretion. *See United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir.) ("[W]e review rulings as to authentication for abuse of the district court's 'broad discretion.' "), *cert. denied,* — U.S. —, 112 S.Ct. 372, 116 L.Ed.2d 324 (1991). Here, Almonte's only evidence that Ray's notes were verbatim was the assertive form of the notes. Judge Haight considered the form of the notes, and reasonably concluded that a rational jury could not attribute the words to Travers. As the district court explained, Ray's notes look and sound not like a memorialization of Travers's exact words, but like a quickly jotted summary. We therefore find that the district court did not abuse its discretion in finding that Ray's notes were Ray's shorthand characterization of Travers's account of Almonte's confession, and that the notes "did not purport to memorialize all of [Travers's] statements." *Leonardi*, 623 F.2d at 757.

## II

The due process clause of the Fifth Amendment and the compulsory process clause of the Sixth Amendment guarantee each criminal defendant the right to present a defense. *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir.1988). We have explained that "[t]he right to present a defense is one of the 'minimum essentials of a fair trial.' " *Id.* (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973)).

The right to present a defense, however, does not give criminal defendants carte blanche to circumvent the rules of evidence. Restrictions on a defendant's presentation of evidence are constitutional if they serve "legitimate interests in the criminal trial process," *Rock v. Arkansas*, 483 U.S. 44, 55, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)), and are not "arbitrary or disproportionate to the purposes they are designed to serve." *Rock*, 483 U.S. at 56, 107 S.Ct. at 2711. *See also Taylor v. Illinois*, 484 U.S. 400, 414–16, 108 S.Ct. 646, 655–56, 98 L.Ed.2d 798 (1988).

Here, Almonte's proffered defense evidence was excluded because it was not authenticated as a statement attributable to Travers. The authentication requirement serves "legitimate interests in the criminal trial process," and is neither arbitrary nor disproportionate. *Rock*, 483 U.S. at 55–56, 107 S.Ct. at 2711. Therefore, the district court's exclusion of Ray's notes did not violate Almonte's constitutional right to present a defense.

Accordingly, the judgment of the district court is affirmed.